J-S24024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSHUA EDWARD STOUDT | : | No. 1985 MDA 2017 |

Appeal from the Order Entered, November 28, 2017,
in the Court of Common Pleas of Berks County,
Criminal Division at No(s):  CP-06-CR-0001703-2017.

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JUNE 28, 2018**

The Commonwealth appeals from the order granting Joshua Stoudt's

motion to suppress the test results of a warrantless blood draw.  We reverse.

The facts of this case as stipulated by the Commonwealth and adopted

by Stoudt are as follows:

> On December 27, 2016 at 7:25 p.m., Trooper Vincent Lopez
> responded to the area of a motor vehicle accident in
> Ruscombmanor Township, Berks County.  When the trooper
> arrived at the scene, he observed a vehicle parked on the
> front lawn of a home close to the front porch stoop.  Stoudt
> was the driver of the vehicle.  Upon speaking to Stoudt,
> Trooper Lopez noticed a faint odor of alcohol on his breath.
> An empty prescription pill bottle was on the floor at his feet.
> The trooper spoke to the eyewitness who followed Stoudt,
> and suspecting that Stoudt was impaired, he conducted field
> sobriety testing.  In all three tests, Stoudt displayed signs
> of impairment.  Upon questioning, Stoudt admitted to
> having a few drinks, but he denied consuming prescription
> medication or other drugs.  Stoudt explained that the empty

pill bottle was used to transport over-the-counter medication when needed.

Trooper Lopez arrested Stoudt for suspicion of DUI and transported him to St. Joseph's Hospital for blood testing. Trooper Lopez read Stoudt the DL-26B form verbatim, Stoudt signed it and he submitted to blood testing. The trooper did not threaten, force, or coerce Stoudt into signing the form, and there was no mention of jail time or additional penalties. This testing was negative for blood alcohol content, but revealed the presence of amphetamine, methamphetamine, Clonazepam and its metabolite.

Commonwealth's Brief at 6. (citations omitted).

Stoudt filed a pretrial motion, seeking to suppress the warrantless blood draw based on the decision in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160 (2016), and a writ of habeas corpus. A suppression hearing was held September 8, 2017, where the suppression court granted Stoudt's motion with respect to the blood test results.

The Commonwealth raises the following two issues on appeal:

1. Did the trial court err in suppressing evidence pursuant to *Birchfeld v. North Dakota*, where the DL-26B Form was modified to remove the objectionable language regarding the enhanced penalties for a blood testing refusal, rendering the consent to the blood draw voluntary?

2. Did the trial court err in suppressing the evidence pursuant to *Birchfeld v. North Dakota*, where the totality of the circumstances indicates that the consent to the blood draw was voluntary?

Commonwealth Brief at 4.

We begin our analysis by stating our Court's well-settled standard of review for a suppression ruling. Our review is limited to determining whether the record supports the findings of fact of the suppression court and whether

the legal conclusions drawn from those findings are correct. *Commonwealth v. Mistler,* 912 A.2d 1265, 1268 (Pa. 2006). We are bound by the factual findings of the suppression court, which are supported by the record, but we are not bound by the suppression court's legal rulings, which we review *de novo*. *Commonwealth v. Snyder*, 963 A.2d 396, 400 (Pa. 2009).

Our scope of review is limited to the evidence presented at the suppression hearing. *Commonwealth v. Ennels*, 167 A.3d 716 (Pa. Super. 2017). Because Stoudt prevailed on the issue before the suppression court, we are limited to considering Stoudt's evidence and so much of the Commonwealth's evidence, only to the extent that it does not contradict the context of the record as a whole. *Id.* at 718-19.

Both the Fourth Amendment of the United States Constitution to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. "The administration of a blood test, performed by an agent of, or at the direction of the government, constitutes a search under both the United States and Pennsylvania Constitutions." *Commonwealth v. Evans*, 153 A.3d 323, (Pa. 2016) (citations omitted). If an officer performs a blood-draw search without a warrant, it is "unreasonable and therefore constitutionally impermissibile, unless an established exception applies. Exceptions to the warrant requirement include the consent exception. For the consent exception to apply, the consent must be voluntary." *Id.*

In granting Stoudt's motion, the trial court concluded that Stoudt did not voluntarily consent to the blood-draw, because at the time Stoudt underwent the blood-draw, the Motor Vehicle Sections had not yet been amended to cure the constitutional defects. The trial court reasoned that "while [Stoudt] was not informed of the enhanced criminal penalties when Trooper Vincente Lopez read the DL-26B to him, a citizen is presumed to know the laws of this Commonwealth." In essence, the trial court reasoned that Stoudt was presumed to know of § 3804 as it appeared in the Vehicle Code at the time of his arrest. Consequently, he would have weighed the criminal sanctions provided by that law in deciding whether to consent to the blood-draw, thereby rendering his consent involuntary. We disagree.

The issues in this case stem from the United States Supreme Court's decision in *Birchfield*. In that case, the defendant was arrested for a DUI. Prior to a warrantless blood-draw, the arresting officer informed the defendant that refusing the blood-draw had criminal consequences. Upon being informed of the criminal sanctions, the defendant consented to the blood-draw. *Id.* at 2172. The defendant argued that "his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime." *Id.* The Supreme Court of the United States agreed, holding that motorists could not be deemed to have consented to submit to a blood test on pain of committing a criminal offense. *Id*. at 2185-86.

The critical inquiry following *Birchfield* is whether the officer conveyed the threat of enhanced criminal penalties at the time of the arrest when

seeking a warrantless blood-draw.  Since the decision of **Birchfield,** this Court has decided several cases consistent with this inquiry.  **See Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa. Super. 2017) (holding that "police may not threaten enhanced punishment for refusing a blood test in order to obtain consent; whether that enhanced criminal punishment is … ultimately imposed is irrelevant to the question of whether the consent was valid."); **Commonwealth v. Smith**, 177 A.3d 915 (Pa. Super. 2017) (holding that denial of suppression was proper when the arresting officer never told the defendant that he would be subjected to greater criminal penalties if he refused the blood-draw).

Our most recent decision in **Commonwealth v. Johnson**, No. 1198 MDA 2017, 2018 Pa. Super. LEXIS 528 * (Pa. Super. May 21, 2018), is similar to Stoudt's case.  In **Johnson**, the defendant was arrested for a DUI.  **Id.** at *1.  The defendant had existing knowledge that § 3804 provided for increased penalties upon refusal to consent to a blood-draw.  **Id.** at *2.  The officer, however, used a DL-26 form that did not contain any reference to enhanced penalties for refusing to consent to the blood-draw.  **Id.**  Additionally, the officer never told the defendant that she would be subject to enhanced criminal penalties.  **Id.**  There, because § 3804 was not yet amended, the trial court in **Johnson,** believed the driver should have been notified of a change in the law prior to giving her consent.  We reversed and held that the defendant's consent to the blood-draw was voluntary under these circumstances, and that the defendant's ignorance of **Birchfield**, which

rendered the threat of enhanced penalties illegal, including those on the books at § 3804 was irrelevant. *Id.* at *8.

As in *Johnson*, the arresting officer in Stoudt's case never told Stoudt that he would be subject to enhanced criminal penalties if he refused to consent to a blood-draw. Also, the DL-26B form used in Stoudt's case accorded with *Birchfield*, because it did not threaten additional criminal sanctions for refusal. The coerced consent by the police in *Birchfield* was not present in Stoudt's case.

The trial court overlooked the maxim that the Constitution of the United States is the supreme Law of the Land. U.S. Const. Art. VI, Cl. 2. The constitutional pronouncements of the United States Supreme Court have immediate and national consequence. On the day *Birchfield* was announced, it became the new law of the land. And, because Stoudt was presumed to know the law, it was constructively imputed that he was aware that § 3804(c)'s additional criminal sanctions were without force or effect of law.

The fact that the Vehicle Code had not yet been amended prior to Stoudt's arrest was irrelevant. The Supreme Court's constitutional decision in *Birchfield* became the reigning law, which Stoudt was presumed to know. *Johnson, supra.* Because the arresting officer did not convey any threat of enhanced criminal penalties during Stoudt's arrest, and the DL-26B did not threaten criminal sanctions for refusing to submit to a blood-draw, Stoudt's consent was voluntary. The court was incorrect in concluding otherwise.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2018